UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB N. CUNNINGHAM,<br>Plaintiff,<br>v.<br>SOFI BANK, N.A.,<br>Defendant. | No. 2:25-cv-03161-TLN-SCR<br><br>**ORDER** |

This matter is before the Court on Defendant SoFi Bank N.A.'s ("Defendant") Motion to Dismiss. (ECF No. 8.) Plaintiff Jacob N. Cunningham ("Plaintiff") filed an opposition. (ECF No. 11.) Defendant filed a reply. (ECF No. 12.) For the reasons set forth below, the Court GRANTS Defendant's Motion to Dismiss.

///

///

///

///

///

///

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises from Defendant's alleged failure to adequately investigate an unauthorized transaction in Plaintiff's checking account. Plaintiff maintains a checking account with Defendant. (ECF No. 1 at 3.) Plaintiff alleges Defendant debited two transactions from his account — the first for $88.45 on October 3, 2024, and the second for $93.45 on November 2, 2024, both from Xfinity — that he did not authorize. (*Id.* at 4.) Plaintiff called Defendant on October 10, 2024, to dispute the first transaction and called Defendant the following month[1] to dispute the second transaction. (*Id.*) In response to each call, Defendant added provisional credits to Plaintiff's account in amounts matching the unauthorized transactions. (*Id.*) On November 11, 2024, Defendant informed Plaintiff by email it would not reverse the first unauthorized transaction and withdrew the $88.45 provisional credit. (*Id.* at 4, 6.) On December 30, 2024, Defendant informed Plaintiff it had resolved the second unauthorized transaction in Plaintiff's favor and made the $93.45 provisional credit permanent. (*Id.* at 4.)

On October 31, 2025, Plaintiff filed this civil action against Defendant, alleging claims for violations of the Electronic Fund Transfer Act ("EFTA") and state-law conversion. (ECF No. 1 at 8–9.) Through his Complaint, Plaintiff challenges Defendant's investigation of the first unauthorized transaction and its subsequent withdrawal of the $88.45 provisional credit. (*Id.* at 6.) Defendant filed the instant motion to dismiss Plaintiff's Complaint on January 7, 2026. (ECF No. 8.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon

[1] Plaintiff does not provide an exact date as to when he contacted Defendant to dispute the second unauthorized transaction. (*See id.*)

which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. ANALYSIS

Defendant argues Plaintiff's EFTA claims are time-barred and that Plaintiff fails to state a claim for conversion. The Court will consider each of Plaintiff's claims in turn.

### A. EFTA Claims

Congress enacted the EFTA "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," and its "primary objective" is "the provision of individual consumer rights." 15 U.S.C. § 1693(b). Two provisions of the EFTA are relevant here. The first concerns error resolution. 15 U.S.C. § 1693f. If a consumer discovers an error in their account, such as "an unauthorized electronic fund transfer," the consumer may notify the financial institution within sixty days. *Id.* § 1693f(a), (f)(1). The financial institution must then "investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." *Id.* § 1693f(a). Alternatively, a financial institution may, within ten business days of receiving the consumer's notice, "provisionally recredit the consumer's account for the amount alleged to be in error . . . pending the conclusion of its investigation," and "[s]uch investigation shall be concluded not later than forty-five days after receipt of notice of the error." *Id.* § 1693f(c). "If the financial institution determines after its investigation . . . that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its

investigation[.]" *Id.* § 1693f(d). The second provision, concerning consumer liability, limits a consumer's liability for unauthorized transfers. 15 U.S.C. § 1693g. The consumer's liability for an unauthorized transfer cannot exceed the lesser of:

> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected[.]

*Id.* § 1693g(a).

Violation of either the error resolution or consumer liability provision gives rise to a private cause of action. "[A]ny person who fails to comply with any provision of [the EFTA] with respect to any consumer, except for an error resolved in accordance with [§] 1693f of this title, is liable to such consumer" for damages specified by statute. 15 U.S.C. § 1693m(a). "Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." *Id.* § 1693m(g).

Plaintiff alleges Defendant violated the EFTA's error resolution and consumer liability limit provisions. (ECF No. 1 at 6, 8.)

*i. Error Resolution Claim*

Defendant argues the one-year limitations period for Plaintiff's claim under the EFTA's error resolution provision began October 20, 2024, ten days after Plaintiff notified Defendant of the first unauthorized transaction on October 10, 2024. (ECF No. 8 at 3, 7.) Defendant maintains Plaintiff's claim became time-barred on October 21, 2025, and his Complaint was not filed until October 31, 2025. (*Id.* at 7.) In opposition, Plaintiff contends liability arises when the financial institution completes its error resolution process, which Plaintiff alleges occurred here November 11, 2024, and to interpret the statute to require initiation of litigation while the process is ongoing and before any injury has occurred would lead to "'absurd results.'" (ECF No. 11 at 10, 12 (citation omitted).) In reply, Defendant argues Plaintiff presents no authority that controverts the

caselaw interpreting the statute of limitations as commencing ten days after a consumer gives notice of an error and asserts this rule comports with the provisional nature of the credit a financial institution may issue during the error resolution process. (ECF No. 12 at 2–6.)

Defendant cites cases uniformly indicating that the limitations period for an EFTA error resolution claim begins ten days after the consumer provides the financial institution with notice of an error. (ECF No. 8 at 7; ECF No. 12 at 3.) Notably, courts have applied this limitations period calculation both when a financial institution fails to investigate an unauthorized transaction and, as here, when its investigation allegedly is inadequate. *Ghalchi v. U.S. Bank, N.A.*, No. CV 14-6619 PSG (CWx), 2015 WL 12655402, at *8 (C.D. Cal. Jan. 8, 2015) (concerning failure to investigate); *Katz v. JP Morgan Chase, N.A.*, No. 9:14-cv-80820-MIDDLEBROOKS, 2015 WL 11251764, at *3 (S.D. Fla. Feb. 10, 2015) (concerning inadequate investigation); *Lumbus v. Huntington Bank*, No. 1:25-CV-00190, 2025 WL 2391456, at *7 (N.D. Ohio Aug. 18, 2025) (same).[2]

In contrast, Plaintiff cites no authority specifically supporting his contention that the limitations period for his error resolution claim began when Defendant denied his dispute. (ECF No. 11 at 10–14.) Rather, several of Plaintiff's proffered cases concern the limitations period for violations of a different EFTA section governing recurring, preauthorized electronic fund transfers. *Wike v. Vertrue, Inc.*, 566 F.3d 590, 593 (6th Cir. 2009) (concerning 15 U.S.C. § 1693e); *Harvey v. Google Inc.*, No. 15-cv-03590-EMC, 2015 WL 9268125, at *2–*3 (N.D. Cal. Dec. 21, 2015) (same). Because Plaintiff does not raise this variety of EFTA claim, these cases are inapposite. Plaintiff also cites Supreme Court precedent establishing general principles for

---

[2] The Court notes the error resolution provision on which these cases rely requires a financial institution to complete its investigation within ten *business* days, not ten *calendar* days as the cases imply. *Compare* 15 U.S.C. § 1693f(a) ("[T]he financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days."), *with, e.g., Golden-Koether*, 2011 WL 6002979, at *2 ("'In light of the ten-day statutory period within which a financial institution must provide a written response,' the statute of limitations begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." (citation omitted)). This distinction does not change the outcome here, as Plaintiff filed the present action more than one year and ten business days after he notified Defendant of the first unauthorized transaction on October 10, 2024. (ECF No. 1 at 4.)

limitations periods. (ECF No. 11 at 10–11.) Under that precedent, "[a] limitations period ordinarily does not begin to run until the plaintiff has a 'complete and present cause of action,'" i.e., when a "plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 195, 201 (1997) (citations omitted). But as Defendant correctly notes in reply, *Bay Area Laundry* has been applied in the EFTA context, albeit with a consumer liability claim, to start the limitations period "each time funds were electronically transferred . . . without authorization." *Woodruff v. Bank of America, N.A.*, No. 1:18-CV-3556-MHC, 2018 WL 11461338, at *10 (N.D. Ga. Dec. 4, 2018). By analogy here, *Bay Area Laundry*'s general guidance is consistent with the specific rule that an error resolution claim accrues ten business days after a consumer provides notice to the financial institution. Because none of Plaintiff's authorities address the limitations period for error resolution claims, the Court finds them ultimately unpersuasive.

The Court is also unpersuaded by Plaintiff's argument that the rule will incentivize consumers to file "lawsuits . . . solely to preserve limitations" before investigations conclude and render a financial institution's post-investigation duties "meaningless" because they could postdate the limitations period. (ECF No. 11 at 12.) To the extent the Court considers these policy arguments, they lack merit. Even at their longest possible duration, the time limits in the error resolution process are well under one year and ten business days from when a consumer provides notice of an error. A financial institution must either complete its investigation within ten business days or, if it issues a provisional credit, complete its investigation within forty-five days plus ten business days of when the consumer provides notice of an error. 15 U.S.C. § 1693f(a), (c). The institution must issue a written explanation of an investigation's results within three business days of completing the investigation. 12 C.F.R. § 1005.11(c)(2)(iv), (d)(1). Accordingly, a financial institution's investigation and resulting report to the consumer may at most consume 51 days of the 365 days during which a consumer can timely file an error resolution claim. *Id.* §§ 1693f(c), 1693m(g). A consumer therefore still would have 314 days — over ten months — after a financial institution concludes and reports on its investigation to file an error resolution claim, even if the financial institution uses the maximum time to complete its

investigation. Measuring the limitations period from ten business days after the consumer gives notice is thus unlikely to lead to absurd results.

Contrary to Plaintiff's contention in opposition, the EFTA's implementing regulation does not make the financial institution's final decision the actionable event under the error resolution provision. (ECF No. 11 at 12.) The financial institution's post-investigation duties are to provide a written explanation to the consumer within three business days of concluding the investigation, "promptly provide copies of the documents" it relied on upon the consumer's request, notify the consumer when the provisional credit is debited, and honor certain transfers for five days following notice of the debiting. 12 C.F.R. § 1005.11(d). While the financial institution's written explanation and supporting documents may aid a consumer in litigating an error resolution claim, none of the institution's duties suggest when the consumer's limitations period commences. If anything, the multitude of dates contemplated in the regulation —a written explanation within three business days, document production "promptly" after a consumer's request, and debit of the provisional credit without a specified timeline — muddies Plaintiff's proposed start of the limitations period. *Id.* The more definite rule is that the limitations period starts ten days after the consumer provides notice to the financial institution, not "at the conclusion of the investigation, whenever that may be." *See Katz*, 2015 WL 11251764, at *3.

Based on the foregoing, the Court agrees with Defendant that Plaintiff's error resolution claim is time-barred. Plaintiff alleges he notified Defendant of the first unauthorized transaction on October 10, 2024, and he filed this action on October 31, 2025, more than one year and ten business days later. (ECF No. 1 at 3.) Accordingly, the Court DISMISSES Plaintiff's error resolution claim.

*ii. Consumer Liability Claim*

For Plaintiff's consumer liability claim, Defendant contends the statute of limitations commenced when the first unauthorized transaction occurred on October 3, 2024. (ECF No. 8 at 8–9.) Defendant presents other courts' consistent conclusion that the limitations period for consumer liability claims begins when a consumer's funds in amounts above 15 U.S.C. § 1639g(a)'s limits are transferred without the consumer's authorization. (*Id.* (citing cases).)

Mirroring his argument regarding his error resolution claim, Plaintiff instead argues the limitations period began when Defendant concluded its investigation adversely to Plaintiff and withdrew the provisional credit. (ECF No. 11 at 15–16.) In support of his position, Plaintiff contends the structure of the EFTA indicates he did not have a "complete and present cause of action" until Defendant completed its investigation and imposed liability on Plaintiff by withdrawing the provisional credit. (*Id.* at 15–16.) Plaintiff also argues that under Defendant's view, "consumers would be forced to sue while provisional credit remained in place." (*Id.* at 16.)

The Court finds Defendant's position persuasive. Because the actionable violation of the consumer liability provision is the transfer itself, not the financial institution's response to it, the cause of action arises "[a]t the moment an unauthorized transfer of funds from the consumer's account occurs." *Trang v. JPMorgan Chase Bank, N.A.*, No. 3:22-cv-01744-HZ, 2023 WL 6147195, at *8 (D. Or. Sept. 19, 2023); 15 U.S.C. § 1693g(a) ("In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of [the liability caps]."). The Court therefore agrees with Defendant that the statute of limitations commenced when the first unauthorized transfer of funds occurred on October 3, 2024.

It is of no consequence that Defendant issued a provisional credit to Plaintiff during its investigation. As the name indicates, the credit was provisional and only guaranteed to be available to Plaintiff "[d]uring the pendency of the investigation." 15 U.S.C. § 1693f(c). Applicable regulation underscores the credit's impermanence. In debiting a provisional credit after it concludes an investigation adversely to the consumer, a financial institution "need honor only items that it would have paid if the provisionally credited funds had not been debited." 12 C.F.R. § 1005.11(d)(2)(ii). Thus, the credit did not change the liability Defendant attributed to Plaintiff for the unauthorized transaction.

Plaintiff's policy rationale also does not hold water. (*See* ECF No. 11 at 16 (claiming "consumers would be forced to sue while provisional credit remained in place").) The longest possible time between an unauthorized transaction and an investigation's termination is approximately 105 days: a consumer could report an error on the last possible day, i.e., sixty days after receiving documentation of the error, 15 U.S.C. § 1693f(a), and the financial institution,

after issuing a provisional credit, could conclude its investigation and sustain or withdraw the provisional credit on its last possible day forty-five days later, *id.* at § 1693f(c). Even with this maximum time, the consumer would still have 260 days — more than eight months — after the investigation concluded to timely file a consumer liability cause of action. *See id.* § 1693m(g). Thus, the Court finds Plaintiff's prediction of undesirable outcomes unconvincing.

Accordingly, Plaintiff had one year from the time the funds in the unauthorized transaction were transferred on October 3, 2024, to file his consumer liability claim. Because Plaintiff did not act on the claim until he filed his Complaint on October 31, 2025, the claim is barred by the statute of limitations. Therefore, the Court DISMISSES Plaintiff's consumer liability claim.

In the instant case, Plaintiff cannot amend his Complaint to show he timely filed his EFTA claims. Accordingly, the Court DISMISSES Plaintiff's EFTA claims without leave to amend. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) ("[L]eave to amend will not be granted where an amendment would be futile." (citation omitted)).

B. <u>Conversion Claim</u>

With both EFTA causes of action barred by the statute of limitations, Plaintiff's Complaint consists solely of one state-law claim for conversion. (ECF No. 1 at 8–9.) Plaintiff indicates the Court has supplemental jurisdiction over his conversion claim based on the Court's federal question jurisdiction over his EFTA claims. (*Id.* at 2–3.) The Court "may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction," and the Court may do so sua sponte. 28 U.S.C. § 1367(c)(3); *Lozano v. Butte Cnty.*, No. 2:22-cv-01313-TLN-DMC, 2023 WL 5183162, at *6 (E.D. Cal. Aug. 11, 2023). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citation omitted). As discussed above, the Court dismisses Plaintiff's claims under federal law. This is not the unusual case where the balance of factors weighs in favor of

exercising supplemental jurisdiction over the remaining state-law claim. *See id.* Rather, considering this District's high case load and the parties' disagreement over California common law (*compare* ECF No. 8 at 9–11, *with* ECF No. 11 at 16–17), the factors of judicial economy, fairness, and comity cut against the Court's exercise of supplemental jurisdiction here. Accordingly, the Court DISMISSES Plaintiff's conversion claim because the Court declines to exercise supplemental jurisdiction over it.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss without leave to amend as to the EFTA claims and without prejudice as to the conversion claim. (ECF No. 8.) The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATE: September 21, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE